UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF PONTIAC GENERAL EMPLOYEES' RETIREMENT SYSTEM, On Behalf of Itself and All Others Similarly Situated, | : Civil Action No. 10-cv-00376-RWS : : <u>CLASS ACTION</u> : |
| Plaintiff, | : |
| vs. | : |
| STRYKER CORPORATION, et al., | : |
| Defendants. | : |

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. §1404(A)

## TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ..................................................................................1

II. RELEVANT FACTUAL BACKGROUND ...................................................................2

III. ARGUMENT ..................................................................................................................4

    A. Defendants Have Not Made a Clear and Convincing Showing that the Balance of Factors Favors Transfer ........................................................................4

        1. The Considerable Weight Accorded Plaintiff's Choice of Forum ..............5

        2. Convenience of the Parties and Witnesses .................................................6

        3. Locus of Operative Facts ............................................................................9

        4. Other Neutral Factors ...............................................................................11

        5. Trial Efficiency and the Interests of Justice .............................................12

IV. CONCLUSION .............................................................................................................12

## TABLE OF AUTHORITIES

          **Page**

**CASES**

*Albert Fadem Trust v. Duke Energy Corp.*,
    214 F. Supp. 2d 341 (S.D.N.Y. 2002) ....................................................................... 6, 12

*Am. Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v.
    LaFarge North Am., Inc.*,
    474 F. Supp. 2d 474 (S.D.N.Y. 2007) ............................................................................ 11

*Berman v. Informix Corp.*,
    30 F. Supp. 2d 653 (S.D.N.Y. 1998) .............................................................................. 12

*Blass v. Capital Int'l Sec. Group*,
    No. 99-cv-5738 (FB), 2001 U.S. Dist. LEXIS 3504
    (E.D.N.Y. March 23, 2001) ............................................................................................. 4

*Capitol Records, Inc. v. MP3tunes, LLC*,
    No. 07 Civ. 9931 (WHP), 2008 U.S. Dist. LEXIS 75329
    (S.D.N.Y. Sept. 29, 2008) .................................................................................... 4, 11, 12

*Collins & Aikman*,
    438 F. Supp. 2d 392 (S.D.N.Y. 2006) ............................................................................ 11

*D.H. Blair & Co., Inc. v. Gottdiener*,
    462 F.3d 95 (2d Cir. 2006) .............................................................................................. 5

*DiRienzo v. Philip Servs. Corp.*,
    294 F.3d 21 (2d Cir. 2002) .............................................................................................. 5

*Earley v. B.J.'s Wholesale Club, Inc.*,
    No. 06 Civ. 3529 (WHP), 2007 U.S. Dist. LEXIS 40125
    (S.D.N.Y. Jun. 4, 2007) ................................................................................................... 5

*Erick Van Egeraat Associated Architects B.V. v. NBBJ LLC*,
    08 Civ. 7873 (JSR), 2009 U.S. Dist. LEXIS 42385
    (S.D.N.Y. Apr. 27, 2009) ................................................................................................. 8

*Funke v. Life Fin. Corp.*,
    No. 99 Civ. 11877 (CBM), 2003 U.S. Dist. LEXIS 1226
    (S.D.N.Y. Jan. 25, 2003) ........................................................................................... 5, 11

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) .................................................................................................... 4, 5

                                                    **Page**

*Hirschhorn v. Blanchette*,
    No. 77 civ. 9242 (RLC), 1977 U.S. Dist. LEXIS 12977
    (S.D.N.Y. Nov. 11, 1977).................................................................................................4

*Hummingbird USC, Inc. v. Tex. GSL Corp.*,
    No. 06 Civ. 7672 (LTS)(GWG), 2007 U.S. Dist. LEXIS 4596
    (S.D.N.Y. Jan. 22, 2007)................................................................................................9

*In re AtheroGenics Sec. Litig.*,
    No. 05 Civ. 00061 (RJH), 2006 WL 851708
    (S.D.N.Y. Mar. 31, 2006) ..............................................................................................7

*In re Cuyahoga Equip. Corp.*,
    980 F.2d 110 (2d Cir. 1992)..........................................................................................4

*In re Geopharma, Inc. Sec. Litig.*,
    No. 04 civ. 9463 (SAS), 2005 U.S. Dist. LEXIS 8885
    (S.D.N.Y. May 11, 2005)................................................................................ 1, 5, 6, 9

*In re Nematron Corp. Sec. Litig.*,
    30 F. Supp. 2d 397 (S.D.N.Y. 1998) ...........................................................................11

*Langley Partners, L.P. v. Tripath Tech., Inc.*,
    No. 05 Civ. 5255 (HB), 2005 U.S. Dist. LEXIS 23004
    (S.D.N.Y. Oct. 6, 2005) ................................................................................................7

*Orb Factory, Ltd. v. Design Science Toys, Ltd.*,
    6 F. Supp. 2d 203 (S.D.N.Y. 1998) ..........................................................................5, 9

*Wellquest Int'l, Inc. v. Genesis Intermedia.com Inc.*,
    No. 00 Civ. 6558, 2001 WL 1246592
    (S.D.N.Y. Oct. 18, 2001)...............................................................................................9

*Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.*,
    976 F. Supp. 174 (W.D.N.Y. 1997)..............................................................................7

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78aa.............................................................................................................................1

**Page**

28 U.S.C.
    §1404(a) ................................................................................................................. 4, 9

Federal Rules of Civil Procedure
    45(b)(2)(B) ................................................................................................................. 8

Securities Exchange Act of 1934 ....................................................................................... 1, 2

Plaintiff City of Pontiac General Employees' Retirement System ("Plaintiff") respectfully submits this memorandum of law in opposition to the motion to transfer venue to the United States District Court for the Western District of Michigan, filed by Defendants Stryker Corporation ("Stryker" or the "Company"), Stephen P. MacMillan and Dean H. Bergy (collectively, "Defendants").

## I.   PRELIMINARY STATEMENT

On January 15, 2010, Plaintiff filed a putative class action complaint ("Complaint," cited as "¶___") in the Southern District of New York on behalf of purchasers of the common stock of Stryker between January 25, 2007 and November 13, 2008, alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act"). No other securities class action complaints were filed in any other court.

Seeking to gain home field advantage, Defendants argue that this case should be transferred to the Western District of Michigan, because that is where Stryker maintains its headquarters. If this factor alone was a sufficient basis for transfer, though, then every corporate defendant in a securities class action would always be able to transfer venue to their home district. *See In re Geopharma, Inc. Sec. Litig.*, No. 04 civ. 9463 (SAS), 2005 U.S. Dist. LEXIS 8885, at *5-*6 (S.D.N.Y. May 11, 2005) (rejecting defendants' argument that securities suits must always be in the home district of the defendant and stating that such a position is at "odds with the actual text of section 27 . . ."). Indeed, under the Exchange Act, venue is permissible either: (1) "in the district wherein any act or transaction constituting the violation occurred"; or (2) "in the district wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. §78aa. The statute provides for nationwide jurisdiction and venue and is to be liberally construed.

In making their arguments, Defendants conveniently ignore the basis for Plaintiff's selection of this District for litigating this action – namely, the fact that the heart of the allegations stems from

the Company's lack of compliance with federal regulations concerning the manufacture and sale of medical devices that occurred at Stryker's Ireland, New Jersey and Massachusetts facilities. As detailed herein, these facts make the Southern District of New York an ideal location for this case since this Court maintains subpoena power over any non-party witnesses who may be located in New Jersey (the Western District of Michigan does not), it is closer to Massachusetts than the Western District of Michigan, and flights from Ireland to New York are more common than flights from Ireland to the Western District of Michigan.

Where, as here, Plaintiff has chosen a proper venue for its action, its choice of venue is entitled to great deference, even in class actions. Such deference is especially warranted here, where this District's proximity to the crucial events underlying this action and centrality to all the parties demonstrates that Plaintiff's choice of this District is plainly not the result of "forum-shopping."

In sum, the liberal venue provisions of the Exchange Act dictate that this case remain in this District, and because Defendants have not shown that either the convenience of the parties or the interests of justice warrant transfer to the Western District of Michigan, their motion should be denied in its entirety.

## II.   RELEVANT FACTUAL BACKGROUND

Defendant Stryker is a medical technology company. Stryker manufactures and sells medical devices, primarily orthopaedic surgical implants, and medical equipment. The Complaint alleges that defendants defrauded investors by falsely representing to the market that Stryker operated its business in compliance with applicable regulations. In order to make the Company appear more profitable than it actually was, defendants cut corners on Stryker's operational costs by failing to document and maintain adequate quality controls over the products it manufactured. The scheme: (i) violated federal regulations regarding the manufacture of medical devices. Specifically, the Company's manufacturing facilities in Mahwah, New Jersey, Cork, Ireland and Hopkinton,

Massachusetts were in material non-compliance with federal regulations regarding the manufacture and sale of medical devices, including Title 21, Code of Federal Regulations (C.F.R.), Part 820 -- the federal Quality System Regulation (21 CFR 820) which sets forth current good manufacturing practice ("GCMP") requirements; (ii) subjected the Company to unnecessary risks of sales disruptions, lower revenues and product liabilities due to product recalls; and (iii) hid hundreds of millions of dollars of additional compliance costs both prior to and during the Class Period, allowing defendants to falsely report and/or project 20%+ earnings growth for Stryker during 2006, 2007 and 2008. In the short-term, Defendants' scheme was highly successful, as reflected in the price of Stryker common stock which reached a 52-week high of $75 per share[1] in December 2007. ¶2.

The scheme began to unravel when Defendants announced in July 2008 that Stryker would incur at least $50 million in additional costs for the next several years in order to "revamp" the Company's compliance systems and procedures and resolve safety issues identified by the U.S. Food and Drug Administration ("FDA") inspections of Stryker's manufacturing facilities that dated back to October/November of 2006. Following this announcement, the price of Stryker common declined 5.6% to close at $63.91 per share on July 21, 2008. ¶29.

Then, on October 17 2008, Stryker announced its operating results for the quarter ended September 30, 2008 and revealed that Stryker could no longer commit to 20% earnings growth targets due in material part to the anticipated increase in compliance costs. Following these statements, the price of Stryker common stock declined 13% to close at $47.14 per share on October 24, 2008. ¶30. Moreover, in November 2008, on the last day of the Class Period, during an investor conference hosted by Credit Suisse, Stryker revealed that it was still losing revenues and customers

---

[1]    All share prices quoted have been split-adjusted.

as a result of the January 2008 hip product recall. Following these disclosures, Stryker common stock declined an additional 23%, closing at $36.11 per share on November 20, 2008. ¶31.

## III. ARGUMENT

### A. Defendants Have Not Made a Clear and Convincing Showing that the Balance of Factors Favors Transfer

It is Defendants' burden to establish that the Western District of Michigan is "*clearly*" the more convenient forum and that a trial there would better serve the interests of justice. *Hirschhorn v. Blanchette*, No. 77 civ. 9242 (RLC), 1977 U.S. Dist. LEXIS 12977, at *5 (S.D.N.Y. Nov. 11, 1977) (emphasis added). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum *should rarely be disturbed*." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (emphasis added). This rule also applies to plaintiff's choice of forum in class actions, such as this one. Nonetheless, pursuant to 28 U.S.C. §1404(a), defendants seek to have this litigation transferred to the Western District of Michigan because that is where Stryker maintains its executive offices.

"Motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a *case-by-case basis*." *Blass v. Capital Int'l Sec. Group,* No. 99-cv-5738 (FB), 2001 U.S. Dist. LEXIS 3504, at *12 (E.D.N.Y. March 23, 2001) (*quoting In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)) (emphasis added). In deciding a motion to transfer, and determining whether transfer from an otherwise proper venue is warranted, courts in the Southern District of New York consider the following factors: (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with governing law; (8) the weight accorded to a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice. *See Capitol Records, Inc. v. MP3tunes,*

*LLC*, No. 07 Civ. 9931 (WHP), 2008 U.S. Dist. LEXIS 75329, at *16 (S.D.N.Y. Sept. 29, 2008); *see also Earley v. B.J.'s Wholesale Club, Inc.*, No. 06 Civ. 3529 (WHP), 2007 U.S. Dist. LEXIS 40125, at *4 (S.D.N.Y. Jun. 4, 2007) (listing factors).

As detailed below, a review of these factors makes clear that Defendants have ***not*** met their burden on this motion and the motion to transfer venue should be denied.

### 1. The Considerable Weight Accorded Plaintiff's Choice of Forum

Of the factors that courts consider, "plaintiff's choice of forum is usually given the greatest weight...." *Geopharma, Inc.*, 2005 U.S. Dist. LEXIS 8885, at *2. As the Supreme Court has made clear, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum ***should rarely be disturbed***." *Gulf Oil Corp*, 330 U.S. at 508 (emphasis added). A "plaintiff's choice of forum is entitled [to] ***considerable weight***...." *Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F. Supp. 2d 203, 210 (S.D.N.Y. 1998) (emphasis added); *see also D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006) (stating that Plaintiff's choice of forum is "given great weight" and denying motion to transfer).

Although Plaintiff's choice may be accorded slightly less weight in a class action, "[a]ffording less deference to representative plaintiffs does not mean they are deprived of all deference in their choice of forum." *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002); *see also Funke v. Life Fin. Corp.*, No. 99 Civ. 11877 (CBM), 2003 U.S. Dist. LEXIS 1226, at *10 (S.D.N.Y. Jan. 25, 2003) ("as long as the choice was for legitimate reasons, it is to be respected."); *Geopharma*, 2005 U.S. Dist. LEXIS 8885, at *5 ("Although less deference is shown to the choice of venue of a class representative than that of an individual plaintiff, that choice should nonetheless be honored unless defendants make a 'convincing showing' that venue should be changed."). Thus, Plaintiff is still accorded proper deference in its choice of venue when representing a class.

Here, Plaintiff has chosen a proper venue, the Southern District of New York, and Defendants have not made any showing that the choice was for illegitimate reasons. Moreover, since class members surely reside in a number of districts, including the Western District of Michigan and the Southern District of New York, the residence of the Plaintiff has little relevance, especially since a lead plaintiff has not even been selected. Thus, the cases relied on by Defendants to argue that Plaintiff's choice of forum is entitled to less deference, *see* Def. Mem. at 4,[2] are unavailing. As discussed below, Defendants have not made a clear and convincing showing that the balance of the other factors strongly favor transfer to the Western District of Michigan. Accordingly, Plaintiff is still accorded proper deference in its choice of venue when representing a class and this action should therefore remain in the Southern District of New York.

### 2. Convenience of the Parties and Witnesses

The convenience of the parties and witnesses also does not weigh in favor of transfer. Class members undoubtedly reside in both New York and Michigan. While a company's headquarters may be something to consider when deciding where a case should proceed, it is certainly not a dispositive factor, and courts routinely deny motions to transfer to a defendant company's home district simply because defendants prefer to litigate there. *See, e.g.*, *Geopharma*, 2005 U.S. Dist. LEXIS 8885, at *5-*6 (rejecting defendants' argument that securities suits must always be in the home district of the defendant and stating that such a position is at "odds with the actual text of section 27 . . ."); *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343-34 (S.D.N.Y. 2002) (denying transfer to Western District of North Carolina, where corporate defendant was headquartered, where outside

---

[2] All references to "Def. Mem. at ___" are to Defendants' Memorandum of Law in Support of Motion to Transfer Venue to the Western District of Michigan filed on or about February 5, 2010.

auditor and underwriter defendants were located in the Southern District of New York).[3] Moreover, where as here, "transfer would merely shift the inconvenience from one party to the other, 'the plaintiff's choice of forum should not be disturbed.'" *Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.*, 976 F. Supp. 174, 182 (W.D.N.Y. 1997) (citations omitted).

The extensive number of non-party witnesses located close to New York also weighs against transfer of the action. While some potential witnesses may reside in Michigan, many others, such as Company employees who worked in the manufacturing facilities that produced defective products reside in New Jersey, Massachusetts and Ireland – all of which are significantly closer in proximity to New York than Michigan.

As the Complaint alleges, the Company's manufacturing facilities, including Stryker's plants in Mahwah, New Jersey, Cork, Ireland and Hopkinton, Massachusetts, were in material non-compliance with federal regulations regarding the manufacture and sale of medical devices. ¶4. The Cork, Ireland manufacturing facility produced several defective products, such as the Trident PSL, Hemispherical Acetabular Cups and the Hip Fracture Stems, which were subject to recall for being "adulterated." ¶¶21, 24, 29. Employees from the Ireland manufacturing facility are important witnesses given that they will be well-informed regarding the Company's lack of adherence to FDA

---

[3]   The cases relied on by Defendants to further support their argument that venue should be transferred to the district where the issuer is headquartered are inapposite. For example, in *Langley Partners, L.P. v. Tripath Tech., Inc.*, No. 05 Civ. 5255 (HB), 2005 U.S. Dist. LEXIS 23004 (S.D.N.Y. Oct. 6, 2005), and *In re AtheroGenics Sec. Litig.*, No. 05 Civ. 00061 (RJH), 2006 WL 851708, at *3 (S.D.N.Y. Mar. 31, 2006), the courts granted defendants' motion to transfer to defendants' home district because other related actions were pending there. *See Langley Partners,* 2005 U.S. Dist. LEXIS 23004, at *2; *AtheroGenics,* 2006 WL 851708, at *3. Also, in *Langley Partners*, the related action had been consolidated and the parties had filed a stipulation of settlement. 2005 U.S. Dist. LEXIS 23004, at *2. Here, no cases alleging violations of the federal securities laws were filed against Defendants anywhere other than the Southern District of New York.

regulations in running the Company's orthopaedic manufacturing operations. ¶18. A key witness will likely be the General Manager/Vice President of Stryker Ireland Ltd., who operates Stryker's orthopaedics manufacturing facility in Cork, Ireland, and who received a warning letter from the FDA's Office of Compliance concerning several packaging issues and bioburden problems. *Id*. Importantly, this individual, as well as other key witnesses from the Company's Ireland facility, will be less burdened to travel to the Southern District of New York via John F. Kennedy International Airport than they would be travelling to the Western District of Michigan. *See Erick Van Egeraat Associated Architects B.V. v. NBBJ LLC*, 08 Civ. 7873 (JSR), 2009 U.S. Dist. LEXIS 42385, *14-*15 (S.D.N.Y. Apr. 27, 2009) (holding that the "Southern District of New York is [] slightly more convenient for the parties and potential witnesses" when the underlying misconduct occurred abroad).

Important witnesses will also be found at Stryker's Mahway, New Jersey orthopaedic manufacturing facility, where the Company received a warning letter citing bacterial contamination at the plant. *Id*. at 23. Employees at the New Jersey facility will be educated in the Company's safety compliance with FDA's regulations. *Id*. Most importantly, all of the New Jersey facility employees are within the Southern District of New York's subpoena power since they are located less than 100 miles from the courthouse. *See* Fed. R. Civ. P. 45(b)(2)(B) ("a subpoena may be served at any place. . . outside that district but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection"). Additionally, the Director of the FDA's New Jersey district office, who authored the warning letter to the New Jersey manufacturing facility, *see* Exhibit A (attached hereto), is located in New Jersey and is an important third party witness.

In addition to the witnesses who will be found in Ireland and New Jersey, the Company's manufacturing subsidiary in Hopkinton, Massachusetts will also have key witnesses. In fact, the

Company's Massachusetts subsidiary, its former president (located in Massachusetts), and its current sales managers were charged with participating in a fraudulent marketing scheme of medical devices used during invasive spinal and long bone surgeries. *See* Exhibit B (attached hereto). Moreover, the Company's Massachusetts subsidiary and its former president were also charged with making false statements to the FDA. *Id.*

In arguing that Plaintiff "fails to allege any relevant facts in the Complaint to support venue in this District," Def. Mem. at 1, Defendants fail to account for these essential witnesses who are located in the Ireland, Massachusetts and New Jersey facilities and who, together with the FDA officials, are crucial in explaining the Company's compliance issues.

Additionally, defendants failed to include the requisite factual information identifying who their key witnesses will be in this action, other than general descriptions of "pertinent officers, employees and documents." *Id.* "Vague generalizations and failure to clearly specify the key witnesses to be called, along with a statement concerning the nature of their testimony, are an insufficient basis upon which to grant a change of venue under § 1404(a)." *Hummingbird USC, Inc. v. Tex. GSL Corp.*, No. 06 Civ. 7672 (LTS)(GWG), 2007 U.S. Dist. LEXIS 4596, *5-*6 (S.D.N.Y. Jan. 22, 2007) quoting *Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998).

On balance, the convenience of parties and witnesses favors maintaining venue in the Southern District of New York. *See Geopharma*, 2005 U.S. Dist. LEXIS 8885, at *6 ("convenience of defendants' party witnesses cannot operate to eliminate section 27's explicit provision for jurisdiction wherever any violation occurred").

### 3. Locus of Operative Facts

"The location of the operative events is a primary factor in a transfer motion." *Wellquest Int'l, Inc. v. Genesis Intermedia.com Inc.*, No. 00 Civ. 6558, 2001 WL 1246592, *4 (S.D.N.Y. Oct.

18, 2001). Defendants argue that since the statements at issue, stemming from the Company's press releases and SEC filings, were disseminated from Stryker's headquarters, the locus of operative facts solely emanates from Michigan. Def. Mem. at 5. Defendants, however, fail to recognize that the reason why their statements were allegedly false and misleading is because of their failure to comply with federal regulations regarding the manufacture and sale of devices that were manufactured and quality-assured in Stryker's manufacturing facility sites located in Ireland, New Jersey, and Massachusetts – all closer and more convenient to the Southern District of New York. Consequently, it is not the case here that all of the alleged fraud "occurred" in the Western District of Michigan.

As mentioned above, Stryker cut corners by failing to document and maintain adequate controls over its products at the Company's manufacturing facilities located outside of Michigan. Consequently, the bulk of operative facts stemmed from what occurred at these manufacturing facilities. The products manufactured by Stryker in Ireland, New Jersey and Massachusetts were unsalable and subjected the Company to losses and risks caused by product recalls due to Stryker's failure to establish, document and/or maintain manufacturing systems and procedures designed to prevent and correct the production of nonconforming products and other quality problems in violation of GCMP requirement. Defendants' lack of quality assurance or compliance units at these facilities, because of understaffing and underfunding, caused the Company to incur at least $50 million in additional annual costs. These costs affected Stryker's reported earnings, gross profits, and gross profit margins which were materially overstated and could not be sustained because they did not include the true costs needed to ensure that the Company's medical devices were properly designed and produced.

In sum, the locus of operative facts is not limited to Michigan; it includes several areas immediately surrounding, and more conveniently located to, the Southern District of New York.[4]

### 4. Other Neutral Factors

Here: (i) the location of relevant documents; (ii) the availability of process to compel attendance of unwilling witnesses; (iii) the relative means of the parties; and (iv) the forum's familiarity with governing law are all neutral factors, and as such, offer no assistance to defendants in meeting their burden of making a "clear and convincing" showing that Plaintiff's choice of venue should be disturbed. *See Capitol Records*, 2008 U.S. Dist. LEXIS 75329, at *16.

Since documents are now routinely produced electronically, the fact that some relevant documents may be located in Michigan should not weigh in defendants' favor in this motion to transfer. *See Funke,* 2003 U.S. Dist. LEXIS 1266, at *9; *Am. Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v. LaFarge North Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("[t]he location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.").

Defendants have also failed to identify any witness who would be unwilling to attend the trial of this action, absent the compulsion of a subpoena, and any knowledgeable witnesses who would be unwilling to appear can be adequately represented through deposition testimony. Moreover, this Court – unlike the Western District of Michigan – will be able to compel the attendance of any third

---

[4] Defendants rely on *Collins & Aikman*, 438 F. Supp. 2d 392 (S.D.N.Y. 2006), and *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998), among others, to contend that the locus of operative facts "occur[red]" in the Western District of Michigan since that is where the misrepresentations were issued from. Def. Mem. at 5. While the motion to transfer was granted in *Collins & Aikman*, unlike here, two related actions were pending in the transferee court. *In re Nematron* is also distinguishable because, there and unlike here, plaintiff failed to allege any basis for maintaining venue other than that he purchased and sold stock on a securities exchange located in New York.

party witnesses located in New Jersey. Therefore, no prejudice would likely be inflicted upon either party by maintaining an already proper venue in the Southern District of New York.

"Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998). Here, Stryker is a large, well-financed corporation. As this is a class action, Plaintiff's means has little relevance. The forum's familiarity with governing law also has little bearing here, since both the Southern District of New York and the Western District of Michigan are capable of applying the federal securities laws. In fact, "the Southern District of New York is well known to have expertise in securities law." *Albert Fadem Trust*, 214 F. Supp. 2d at 344. Since each of these factors is neutral, they support the presumption of maintaining Plaintiff's chosen venue in the Southern District of New York.

### 5.     Trial Efficiency and the Interests of Justice

Defendants have not shown a "clear-cut" reason for transfer of venue. At best, Defendants have shown that either venue is equally proper; given Defendants' burden on this motion, and the deference to which Plaintiff's choice of forum is entitled, the Court should deny any motion and defer to Plaintiff's choice of forum. Forum-shopping by defendants cannot form the basis for denying Plaintiff's statutory right to pursue this case in this District. Additionally, while Defendants note that the Southern District of New York has a somewhat more congested docket (*see* Def. Mem. at 8), this fact is of little importance since Defendants have not shown that this Court would be unable "to move this case forward promptly and expeditiously." *Id*.

## IV.   CONCLUSION

For the reasons set forth herein, Defendants have failed to meet their burden of establishing "by clear and convincing evidence that transfer is appropriate." *Capitol Records*, 2008 U.S. Dist.

LEXIS 75329, at *16.  Accordingly, the Court should deny Defendants' motion and this action should remain before this Court.

DATED:  February 22, 2010                    COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS, LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD


       */s/ David A. Rosenfeld*
       David A. Rosenfeld

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

SULLIVAN, WARD, ASHER & PATTON, P.C.
CYNTHIA J. BILLINGS
25800 Northwestern Highway
1000 Maccabees Center
Southfield, MI  48075-1000
Telephone:  248/746-0700
248/746-2760 (fax)

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

      I, David A. Rosenfeld, hereby certify that, on February 22, 2010, I caused a true and correct copy of the foregoing document to be served: (i) electronically on all counsel registered for electronic service for this case; and (ii) by first-class mail to any additional counsel.

                                                        */s/ David A. Rosenfeld*
                                                          David A. Rosenfeld

Case 1:10-cv-00376-RWS   Document 13   Filed 02/22/2010   Page 19 of 19