```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

CITY OF PONTIAC GENERAL EMPLOYEES'
RETIREMENT SYSTEM, On Behalf of Itself        10 Civ. 376
and All Others Similarly Situated,
                                                 OPINION
              Plaintiff,

    -against-

STRYKER CORPORATION, STEPHEN P.
MACMILLAN and DEAN H. BERGY,

              Defendants.

------------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        COUGHLIN STOIA GELLER RUDMAN
           & ROBBINS, LLP
        58 South Service Road, Suite 200
        Melville, NY 11747
        By:  Samuel H. Rudman, Esq.
             David A. Rosenfeld, Esq.


        Attorneys for Defendants

        WILSON SONSINI GOODRICH & ROSATI
        1301 Avenue of the Americas, 40th Floor
        New York, NY 10019
        By:  Gideon A. Schor, Esq.
```

**Sweet, D.J.**

Pursuant to 28 U.S.C. § 1404(a), Defendants Stryker Corporation ("Stryker"), Stephen P. MacMillan ("MacMillan") and Dean H. Bergy ("Bergy") (collectively, "Defendants") have moved to transfer this securities class action and all related cases subsequently filed in this District to the United States District Court for the Western District of Michigan at Kalamazoo. Upon the facts and conclusions set forth below, the motion is granted.

**Prior Proceedings and Facts**

On January 15, 2010, the City of Pontiac General Employees' Retirement System (the "Plaintiff"), filed a putative class action complaint in the Southern District of New York on behalf of purchasers of the common stock of Stryker between January 25, 2007 and November 13, 2008, alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act"). No related securities class action complaints have been filed in any other court.

The complaint alleges that Defendants defrauded investors by falsely representing to the market that

1

Stryker operated its business in compliance with applicable regulations; cut corners on Stryker's operational costs by failing to document and maintain adequate quality controls over the products it manufactured; violated federal regulations regarding the manufacture of medical devices, including the current good manufacturing practice requirements set forth in the federal Quality System Regulation, 21 C.F.R. § 820, at manufacturing facilities in New Jersey, Ireland and Massachusetts; subjected Stryker to unnecessary risks of sales disruptions, lower revenues and product liabilities due to product recalls; and hid hundreds of millions of dollars of compliance costs to enable false reports and projections of 20%-plus earnings growth for Stryker in 2006, 2007 and 2008. The price of Stryker common stock reached a 52-week high of $75 per share in December 2007.  (Compl. ¶ 2.)

In July 2008 Stryker announced that it would incur at least $50 million in unanticipated costs to "revamp" its compliance systems and procedures and resolve safety issues identified during U.S. Food and Drug Administration ("FDA") inspections of Stryker's manufacturing facilities in late 2006.  The price of

2

Stryker common stock subsequently declined 4.5% to close at $63.91 per share on July 21, 2008. (Compl. ¶ 29.)

On October 17, 2008, Stryker announced its operating results for the quarter ended September 30, 2008 and revealed that it could no longer commit to 20% earnings growth due in material part to the anticipated increase in compliance costs. The price of Stryker common stock subsequently declined 13% to close at $47.14 per share on October 24, 2008. (Compl. ¶ 30.) In November 2008, Stryker revealed that it continued to lose revenues and customers as a result of the January 2008 hip product recall. Following this disclosure, the price of Stryker common stock declined 23% to close at $36.11 per share on November 20, 2008. (Compl. ¶ 31.)

The instant motion to transfer was heard and marked fully submitted on March 17, 2010.

**The Parties**

Stryker is a Michigan corporation with its global corporate headquarters in Kalamazoo. Stryker manufactures and sells orthopedic surgical implants and medical supplies

3

worldwide. The Company's products include implants used in joint replacement, trauma, craniomaxillofacial, and spinal surgeries; biologies; surgical, neurologic, ear, nose, and throat, and interventional pain equipment; endoscopic, surgical navigation, and communications systems; and patient handling and emergency medical equipment.

Defendants MacMillan and Bergy both reside in or near Kalamazoo. All statements at issue in the complaint were disseminated from Stryker's headquarters in Kalamazoo. The corporate heads of Stryker's Finance, Accounting, Compliance, Corporate Affairs, Legal, and Quality Assurance departments are located in Kalamazoo County.

The Plaintiff is a resident of Pontiac, Michigan. Pontiac is approximately 143 miles from Kalamazoo.

**The § 1404 Standard**

The statute governing change of venue, 28 U.S.C. § 1404(a), provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) strives

4

to prevent waste "'of time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp., 976 F. Supp. 174, 180 (W.D.N.Y. 1997) (quoting Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 27 (1960)). "'[M]otions for transfer lie within the broad discretion of the courts and are determined upon notions of convenience and fairness on a case-by-case basis.'" Linzer v. EMI Blackwood Music Inc., 904 F. Supp. 207, 216 (S.D.N.Y. 1995) (quoting In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992)).

When deciding a motion to transfer, the court must first determine whether the action "might have been brought" in the transferee court. Second, the court must determine whether, considering the "convenience of parties and witnesses" and the "interest of justice," a transfer is appropriate. Wilshire, 976 F. Supp. at 180. To make this determination, courts in the Southern District of New York consider the following factors: (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance

5

of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with governing law; (8) the weight accorded to a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice. See Capitol Records, Inc. v. MP3tunes, LLC, No. 07 Civ. 9931, 2008 WL 4450259, at *5 (S.D.N.Y. Sept. 29, 2008) (citing American Eagle Outfitters, Inc. v. Tala Bros. Corp., 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006)).

**The Western District of Michigan at Kalamazoo Is a Proper Forum**

The threshold question in any Section 1404(a) transfer motion is whether the action might have been brought in the transferee court. This action could have been brought in the Western District of Michigan at Kalamazoo.

Section 27 of the Exchange Act provides for venue in any district "wherein the defendant is found or is an inhabitant or transacts business. . . ." Stryker's global headquarters are located in Kalamazoo, Stryker does business there, and both individual Defendants reside there. Courts routinely transfer securities cases to the

6

issuer's district, and that result is appropriate here. See Langley Partners, L.P. v. Tripath Tech., Inc., No. 05 Civ. 5255 (HB), 2005 WL 2482527, at *2 (S.D.N.Y. Oct. 6, 2005) ("Courts faced with securities fraud actions have transferred those actions to the district in which the issuer is located.").

**The Choice of Forum Weighs against the Motion**

Of the factors that courts consider, "plaintiff's choice of forum is entitled considerable weight, and should not be disturbed unless the balance of the several factors is strongly in favor of the defendant." Orb Factory, Ltd. v. Design Science Toys, Ltd., 6 F. Supp. 2d 203, 210 (S.D.N.Y. 1998).

However, the choice of forum may be accorded less weight in a class action. See Koster v. (American) Lumbermens Mut. Cas. Co., 330 U.S. 518, 525 (1947); In re Geopharma, Inc., No. 04 Civ. 9463, 2005 WL 1123883, at *5 (S.D.N.Y. May 11, 2005) ("[I]n the class action context, plaintiff's choice of forum is given less deference 'when a plaintiff seeks to represent a widely dispersed class.'" (quoting O'Hopp v. ContiFinancial Corp., 88 F. Supp. 2d 31,

7

35 (E.D.N.Y. 2000))). In addition, where the connection between the case and the chosen forum is minimal, a plaintiff's choice is entitled to less deference. See Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998) (the "emphasis placed by a court on [plaintiff's] choice diminishes where the operative facts upon which the litigation is brought bear little material connection to the chosen forum" (internal quotation and citation omitted)); Eres N.V. v. Citgo Asphalt Refining Co., 605 F. Supp. 2d 473, 483 (S.D.N.Y. 2009) (no deference to forum choice when "[t]here is no apparent connection between the Southern District of New York and the operative events"). As set forth below, the locus of operative events in this litigation is Kalamazoo, not New York.

Plaintiff is also a resident of Michigan, not New York, further diminishing the connection to this forum. See Cali v. East Coast Aviation Servs., Ltd., 178 F. Supp. 2d 276, 292 (E.D.N.Y. 2001) (weight of the choice of forum is diminished "when the plaintiff does not reside in the chosen forum, and the plaintiff's chosen forum has no material connection to the facts or issues of the case").

**The Locus of Operative Events Weighs in Favor of the Motion**

Plaintiff asserts, without specification, that "certain of the acts complained of herein took place in this [Judicial] District." (Compl. ¶ 7.) Despite conceding that the press releases quoted or cited in the complaint as purported misstatements were "disseminated from Stryker's headquarters" in Kalamazoo, Plaintiff contends that the locus of operative events "is not limited to Michigan," because it also includes Massachusetts, New Jersey, and Ireland, the sites of Stryker's alleged failure to comply with federal regulations. (Opp. Br. 9-11.)

However, the locus of operative events in a securities action is where the alleged misrepresentations were made. In a securities lawsuit, the alleged "misrepresentations are deemed to occur in the district where the misrepresentations are issued or the truth is withheld, not where the statements at issue are received." In re Collins & Aikman Corp. Sec. Litig., 438 F. Supp. 2d 392, 397 (S.D.N.Y. 2006) (internal quotations and citations omitted). The gravamen of Plaintiff's complaint is not Stryker's purported regulatory noncompliance, but rather its alleged statements about those issues. All such

9

statements — as well as the underlying decisions, such as analytical judgments concerning corporate finances and regulatory compliance — were made in Kalamazoo. (See, e.g., Compl. ¶¶ 16-21, 24-26.) Indeed, all of the key witnesses, including the alleged speakers themselves, reside in or near Kalamazoo.

Plaintiff also asserts that venue is proper in New York because Stryker common stock trades over the New York Stock Exchange. Id. However, this fact does not favor venue in New York. As this Court has stated:

> Although Plaintiffs correctly point out that Bausch & Lomb's stock is traded on the New York Stock Exchange ("NYSE"), which is located in the SDNY, and many of the analysts who follow Bausch & Lomb stock are located in New York City, these contacts don't do it. If they did, the SDNY would have even more business and every plaintiff that sued a NYSE firm could nestle in right here at 500 Pearl Street.

Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb Inc., Nos. 06 Civ. 1942, 2025, 2659, 2916, 2918, 3106, 3653, 2006 WL 1524590, at *4 (S.D.N.Y. June 5, 2006).

Here, Kalamazoo is the locus of operative events, not New York.

**The Convenience Factors Weigh in Favor of the Motion**

The convenience factors favor Kalamazoo over New York even for Plaintiff, a resident of Pontiac, Michigan.

The large majority of the pertinent parties, witnesses, and documents are in Kalamazoo. Stryker's global headquarters, including its administrative office, are located in Kalamazoo County. The two named individual Defendants reside in or close to Kalamazoo. See In re Stillwater Mining Co. Sec. Litig., No. 02 Civ. 2806, 2003 WL 21087953, at *4 (S.D.N.Y. May 12, 2003) (holding that "the convenience of the parties also weighs in favor of transfer" where two of three individual defendants and corporate headquarters are in transferee forum). Potential witnesses are also in Kalamazoo County, where Stryker's executive staff is located, including the corporate heads of Stryker's Finance, Accounting, Compliance, Corporate Affairs, Legal, and Quality Assurance departments. See id. ("The key witnesses in this case are therefore officers and employees of [the company] who participated in drafting or distributing allegedly false and misleading statements."). Similarly, the vast majority of Stryker's documents are located in Kalamazoo.

Plaintiff's assertion that "non-party witnesses" are located "close to New York" is also of no avail. (Opp. Br. 7.) The location of witnesses residing in neither the transferor nor the transferee court "does not factor into the Court's analysis." In re Global Cash Access Holdings, Inc. Sec. Litig., No. 08 Cv. 3516, 2008 WL 4344531, at *4 (S.D.N.Y. Sept. 18, 2008). The only non-party witness identified by Plaintiff is an FDA director purportedly located in New Jersey (Opp. Br. 8) who, in any event, is not subject to subpoena.

Although Plaintiff considers it "important[]" that "all of the [employees at Stryker's] New Jersey facility . . . are within [the Court's] subpoena power" (Opp. Br. 8.), Stryker employees may be compelled to testify without a subpoena. See Global Cash Access, 2008 WL 4344531, at *7 ("[D]efendants' current employees can be compelled to testify without the use of a subpoena."). Plaintiff concedes that the Court's subpoena power is a neutral factor. (Opp. Br. 11.) See Global Cash Access, 2008 WL 4344531, at *7 ("As there are no allegations that any particular witnesses are unwilling to testify should

this matter proceed to trial, this factor is neutral in the Court's analysis.").

**The Interests of Justice and Trial**
**Efficiency Weighs in Favor of the Motion**

Trial efficiency and the interests of justice also favor transfer. As of September 30, 2008, the number of pending cases (civil and criminal) per active judge in the Southern District of New York was 929; in the Western District of Michigan, it was 418. See Billing v. Commerce One, Inc., 186 F. Supp. 2d 375, 379 (S.D.N.Y. 2002) ("The dockets of the competing districts are relevant to this inquiry.") In addition, where, as here, the material events, most of the witnesses and documents, and all of the parties are located in the transferee forum, the interests of justice and judicial efficiency support a transfer. See MBCP Peerlogic LLC v. Critical Path, Inc., No. 02 Civ. 3310, 2002 WL 31729626, at *6 (S.D.N.Y. Dec. 5, 2002); TM Claims Serv. v. KLM Royal Dutch Airlines, 143 F. Supp. 2d 402, 407 (S.D.N.Y. 2001).

Finally, this action is in its infancy, and thus a transfer to the Western District of Michigan would not

13

cause any undue delay. See MBCP Peerlogic, 2002 WL 31729626, at *6. Accordingly, the interests of justice and considerations of judicial economy favor a transfer of this action to the Western District of Michigan at Kalamazoo.

**Conclusion**

Based on the facts and conclusions set forth above, the motion to transfer this action, and any subsequently filed related actions, to the United States District Court for the Western District of Michigan at Kalamazoo is granted.

It is so ordered.

New York, NY
May 20, 2010

ROBERT W. SWEET
U.S.D.J.